MULLIKIN, USE OF THE UNION BANK OF MARYLAND vs. DUVALL, TERRE-TENANT OF DUVALL.—*December*, 1835.

A judgment cannot be revived by *scire facias* after a lapse of twelve years; and the mere fact of an outstanding *fi. fa.* levied on lands, which remained unsold for want of buyers, does not form an exception to the act of limitations, which runs from the recovery of the judgment.

A judgment may be kept alive and in full legal operation for an indefinite period, by issuing an execution upon it within three years; and if such execution is not effective, by renewing it from term to term; but if it is not regularly continued, and a scire facias to revive becomes necessary by the lapse of three years, the term of limitation is to be computed from the judgment or the term when the process of execution could legally issue thereon.

A plaintiff has a double remedy on a judgment; he may keep it alive by an action of debt or *scire facias* as long as he thinks proper.

A judgment obtained upon a *scire facias* is a new judgment, and has all the legal attributes of the original, on which the *scire facias* was founded.

APPEAL from *Anne Arundel* county court.

The circumstances of this case, which was a *scire facias* against the heirs and terre-tenants of *Lewis Duvall*, to revive a judgment against him in favour of the appellant, *Benjamin H. Mullikin*, rendered by the court of appeals at June term, 1819, are fully stated by the learned Judge who delivered the opinion of this court.

From the judgment of the county court in favour of the defendant, the plaintiff appealed to the *Court of Appeals*.

The cause was argued before BUCHANAN, Ch. J., and STEPHEN, DORSEY, and CHAMBERS, Judges.

ALEXANDER and RANDALL for the appellant, contended.

That the time should be computed from the return of the execution, and not from the date of the judgment.

After such return, the process may be renewed at any subsequent period, by entering continuances upon the roll; and if so, there is no reason why a *scire facias* may not also be issued without reference to the date of the judgment, as the situation of the defendant in the latter case is better than

in the former. A *scire facias* is only a formal mode of issuing an execution, by giving the defendant notice beforehand. 2 *Tidd. Pr.* 1006. 2 *Sellon Pr.* 189, 190. *Vanderheyden vs. Gardenier*, 9 *Johns. Rep.* 79.

The statute of *New Jersey* of 1799, contains provisions stronger than our act of 1715, ch. 23 ; and yet if an execution has once been issued on a judgment in the former state, the law is inapplicable. 2 *Southard Rep.* 721, 730.

They referred also to the *Virginia* act of 1792, art. 5. *2d Rev. Code, New York,* 577, *Sec.* 1 *and* 3. *Randolph vs. Randolph,* 3 *Ran.* 490. *2d Saund. Rep.* 68 *(b)* 2 *Harr. Ent.* 444.

MAGRUDER for the appellee.

1. According to the plaintiff's own showing, the *scire facias* issued irregularly and prematurely. The property which had been taken under the *fi. fa.* should first have been disposed of. *Archbold,* 270. *McMichael vs. Knapp,* 7 *Cowen. Rep.* 413. 2 *Tidd. Pr.* 1173.

2. But limitations are a flat bar, the rule being well settled, that upon a *scire facias* to revive a judgment, if limitations are pleaded, you are to count from the judgment.

STEPHEN, Judge, delivered the opinion of the court.

The appellant recovered a judgment in *Anne Arundel* county court against *Lewis Duvall,* which judgment on appeal to this court, was affirmed at June term, 1819. On the 15th of May, 1832, the plaintiff issued a *scire facias* on the judgment of affirmance against the heirs at law, and terretenants of *Lewis Duvall,* directed to *Anne Arundel* county, and another to *Prince George's* county, to be served on the appellee, *Gabriel Duvall,* terre-tenant of said *Lewis Duvall.* To this *scire facias* he appeared and pleaded, *nul tiel* record, no seizin in *Lewis Duvall,* &c. of any lands whereof he is tenant, and the statute of limitations. Upon the two first pleas, issues were joined in the progress of the cause, but as *no* question in relation to them, is to be considered or revised

by this court, we will pass them over without further notice. To the plea of the statute of limitations the plaintiff replied, that within twelve years after the rendition of the judgment in the court of appeals, a writ of *fieri facias* issued thereon, to wit : on the ——— day of February 1820, at the suit of the plaintiff against the goods &c. of the defendant in that judgment, that is to say, the said *Lewis Duvall*, returnable to the second Monday in June then next; that the sheriff at the return day of the writ, made return thereon, stating that he had laid the said execution upon a tract of land, which remained in his hands for want of bidders. To this replication, the defendant demurred generally; the plaintiff joined in demurrer, and the court below ruled the demurrer good. From this decision the present appeal is taken; and the question presented to this court is, whether under the facts stated in the plaintiff's replication, the plea of limitations is a bar to the plaintiff's recovery upon his *scire facias*, in this case.

That part of the act of limitations which embraces the present case, is in the following words, " no bill, bond, judgment, recognizance, statute merchant, or of the staple, or other speciality, whatsoever, except such as shall be taken in the name, or for the use of our sovereign lord the king, his heirs and successors, shall be good, and pleadable, or admitted in evidence, against any person, or persons of this province, after the principal debtor, and creditor have been both dead twelve years, or the debt or thing in action above twelve years standing." It is upon the latter branch of this statutory bar that the present question arises; and was the debt, or thing in action created by, or arising from this judgment of more than twelve years standing, is the point now to be decided. If it was, the statute is mandatory, and imperative in its terms, and opposes a positive bar to the recovery in this case. It is not denied, that more than twelve years had elapsed from the recovery of this judgment, before the *scire facias* issued in this case; but it is contended, that the act of limitations runs not from the time the

judgment took effect, and gave the plaintiff a right to enforce payment by process of execution, but from the time of the return of the execution.    In sustaining this position, we do not think, that the counsel for the appellant has been successful.    It is true, that a judgment may be kept alive, and in full legal operation, for an indefinite period of time, by the issuing an execution upon it within a year and a day, by the law of *England*, and within three years by the law of this State, and if such execution is not effective, by renewing it from term to term; but if it is not regularly continued and a *scire facias* to revive becomes necessary, by the lapse of a year and a day by the *English* law, and of three years by the law of this state, the term of limitation is to be computed, not from the return of the writ but from the judgment, or the time when the process of execution could legally issue thereon.    In 2nd *Tidd. Pr.* 1154; it is said, "the reason why the plaintiff is put to his *scire facias* after the year is, because when he lies by so long, after judgment, it shall be presumed that he hath released the execution, and therefore the defendant shall not be disturbed without being called upon, and having an opportunity in court of pleading the release, or showing cause if he can, why the execution should not go."    In the same book, and same page it is said, "the general rule however that the plaintiff cannot take out execution after the year, without a *scire facias* must be understood with the following restrictions—when a *fieri facias*, or *capias ad satisfaciendum*, is taken out within the year, and not executed, a new writ of execution may be sued out at any time afterwards, without a *scire facias*, provided the first writ be returned and filed, and continuances entered from the time of issuing it."    From the principle thus laid down by *Tidd*, it would seem to follow, that where there is a total suspension of final process upon the judgment, and no continuances are entered, if a year and a day elapse from the time of the judgment in England, or three years in this State, a *scire facias* becomes necessary to revive the judgment, before further process can be obtained upon it; so that

regular continuances in such case seem to be necessary to keep the judgment alive. To the same effect in *2nd Inst.* 471 ; where it said, " if the demandant or plaintiff taketh his process of execution within the year, though it be not served within the year, yet if he continue the same, he may have process of execution at any time after the year." So in 6 *Bac. Abr.* 107, title *scire facias*, it is said, " if a *fi. fa.* be taken out within the year, and a *nulla bona* returned, and continued down several years, a *capias ad satisfaciendum* may issue without a *scire facias ;* but it is otherwise, if no execution be returned by the sheriff to warrant the entry of continuances upon the roll." After the year and a day the law presumes the judgment to be executed or satisfied, and therefore it is, that the plaintiff is put to his *scire facias* to revive the judgment, to which the defendant may appear, and plead in the same manner, as to an action founded upon an original writ; but where continuances are entered upon the roll, they operate as a *continuing demand of the debt* by the plaintiff, and seem to repel the legal presumption of satisfaction, which would otherwise arise from the lapse of time. The execution which is relied upon in this case as preventing the bar of limitations was returned to the June Term of the court of appeals in 1820, and the *scire facias* issued in May, 1832. More than eleven years had elapsed between the return of the execution, and the issuing of the *scire facias.* No continuances have been entered upon the record, nor has any step been taken during the whole of that period by the plaintiff to assert his claim. It is however contended, that twelve years not having elapsed from the return of the execution, the statute of limitations is no bar, because it only commenced to run from that time. After the best consideration, we have been able to bestow upon this subject, we cannot accord to this proposition.

The language of the statute is plain and explicit, that no judgment shall be good, and pleadable, or admitted in evidence, after the principal debtor and creditor have been both dead twelve years, or the debt or thing in action above

twelve years standing. The debt or thing in action here spoken of, clearly refers to the judgment as the evidence of it, and the statute provides, that the judgment shall cease to operate as such evidence, or to be good, and pleadable, after the debt or thing in action so secured by it, has been more than twelve years standing. Whenever therefore, it becomes necessary to resort to a *scire facias* to revive the judgment, and limitations are pleaded, the time must be computed, not from the return of an execution issued thereon, but from the period when the judgment became legally efficient and operative, so as to entitle the party to judicial process to enforce it. Supposing the issuing of an execution to operate as a legal demand of the debt, and as evidence of a claim on the part of the plaintiff, for its continuing existence, still it cannot control the operation of the statute, which in its enactment is positive and peremptory. In the case of a bond, this court have said, that not even the express acknowledgment of the party is sufficient to produce that effect.

In 3 *Gill and Johns*. 504, the language of the court is "that not even an express acknowledgment of the debt, will revive the remedy upon the bond, when barred by the operation of the act."

If then the express acknowledgment of the party that the debt continues to exist, is not sufficient to restore the remedy upon the bond, by reason of the positive and peremptory language of the statute, we cannot ascribe to the execution and return in this case, the faculty imputed to it, of saving the remedy upon the *scire facias*. At common law after the expiration of a year and a day, the plaintiff was compelled to resort to his action of debt on his judgment in personal actions, and the *scire facias* was not given till the statute of *Westm*. 2nd. (13 *Ewd*. 1) so that, now he has a double remedy, and may keep his judgment alive by an action of debt, or *scire facias*, as long as he thinks proper; for it seems to be settled, that the judgment obtained upon the *scire facias*, is to be considered a new judgment, and has all the legal

attributes of the original upon which the *scire facias* was founded. *In Shower's Rep.* 682, the case was, " a *feme sole* recovered judgment, and took husband, and after, they joined in a *scire facias* to have execution ; and had judgment in the *scire facias* ; the wife died, and the husband sued execution, without taking out letters of administration, and it was objected, that he ought not to have execution in his own right, but as administrator to the wife." In that case, HOLT, ch. J. said, " the judgment in the *scire facias* attached a joint interest in *Baron and Feme,* and if the husband died it would survive to the wife, and *e contra ;* and though the judgment in the *scire facias* does not alter the nature, yet it changes the property of the debt, and suit may be brought upon an award of execution." Ample time is then allowed by the law, and sufficient remedies are provided to enable a plaintiff to recover his claims, by the use of reasonable dili‑ gence ; and if by culpable laches, or negligence on his part it is lost, he has no person to blame but himself.

In the pleading referred to, in *2d Harr. Ent.* 446, it appears that limitations were pleaded to a *scire facias* to revive a judgment, and the plaintiff replied to the plea that a *scire facias* issued within twelve years from the obtaining of the judgment, which was abated, and that recently after the abatement the *scire facias* then pending was issued. This case we think so far from sustaining the principle contended for by the plaintiff's counsel in this case, tends to prove the converse of it, by showing the necessity of con‑ tinuing the process to revive without intermission, to prevent the bar of the statute of limitations. This replication it is presumed, was founded upon the doctrine of the *English* courts, in relation to their statute of limitations, where it is held, " that if an executor take out proper process within a year after the death of his testator, if the six years were not elapsed before the death of the testator, though they be lapsed within that year, yet it will be sufficient to take it out of 21st *James* the 1st, ch. 16, by the equity of *sec.* 4."

See *Buller's Nisi prius* 150. The same principle is stated in *Peake's Ev.* 275, where it is said, "if a man commence an action, and die, or a *feme sole*, after the commencement of an action by her marry, whereby it abates, the executor, or administrator in the one case, and the husband and wife in the other, have a reasonable time (which is generally understood to be a year) to commence a fresh action, and may reply .the fact to a plea of the statute." The sense, and understanding of the pleader, as evidenced by the pleading referred to in the entries, seem therefore to have been, as far as they are entitled to weight in the consideration of this case, against the doctrine contended for by the counsel of the plaintiff. The decisions in *Virginia* and *New Jersey* referred to in the course of the argument have been examined, and as they do not appear to have decided the question involved in this controversy, we do not deem it necessary to take particular notice of them. Upon the whole we think, that the decision of the court below was correct, and that their judgment ought to be affirmed.

JUDGMENT AFFIRMED.